UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephanie B. Barrett,
individually; and as
Administratrix of the Estate
of Robert C. Barrett, deceased;
and as natural mother of
Madison Hope Barrett, a minor,
    Plaintiff and
    Counterclaim Defendant

    v.                                Civil No. 06-cv-240-SM
                                      Opinion No. 2008 DNH 172

Ambient Pressure Diving, Ltd.,
    Defendant and
    Counterclaim Plaintiff

## O R D E R

Plaintiff's decedent, Robert C. Barrett, died in a diving accident on August 3, 2002. He was using an Inspiration "rebreather," a closed-circuit underwater breathing apparatus manufactured by Ambient Pressure Diving, Ltd. ("Ambient"). Plaintiff asserts claims of negligence, products liability, breach of warranty, personal injury, wrongful death, and unfair trade practices. Defendant asserts counterclaims for fraud on the court and spoliation of evidence. Before the court are defendant's motion to apply English law in deciding the merits of plaintiff's claims (document no. 187), defendant's motion for default judgment based on plaintiff's alleged spoliation of evidence (document no. 197), and plaintiff's motion for summary

judgment on defendant's counterclaims (document no. 200).  Each motion is duly opposed.

### **Defendant's Motion to Apply English Law**

Because jurisdiction in this case is based on diversity of citizenship, the parties' dispute over applicable law would, ordinarily, be resolved by applying New Hampshire's choice-of-law rules.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  However, when there is no conflict between the laws of the fora preferred by opposing parties, there is no need to undertake a choice-of-law analysis.  See Royal Bus. Group, Inc. v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991).

In support of its argument that application of English law would not overly complicate the court's task, defendant asserts that "English product liability, breach of warranty and consumer protection laws are substantially similar to the laws of New Hampshire in these areas."  That assertion undermines defendant's motion.  If English law and New Hampshire law are substantially similar, little purpose would be served by applying the former rather than the latter.  While it is not entirely clear, defendant's preference for English law might be suggested in document no. 147-3, Defendant's Brief in Support of its Motion in Limine to Preclude Evidence Regarding Loss of the Value of Life

or Hedonic Damages.  In that brief, defendant asserts that "English law does not permit the recovery of hedonic damages," and supports that assertion with a copy of the English Consumer Protection Act of 1987, which covers product liability, consumer safety, and misleading price indications.

Defendant does not, however, identify any particular section of the English Consumer Protection Act, or any precedent interpreting that Act, that bars recovery of hedonic damages, and the court is unable to locate such authority.  Absent some indication that English law is in conflict with New Hampshire law, and given defendant's assertion that the two bodies of law are "substantially similar," defendant's motion to apply English law is denied, albeit without prejudice.

### Defendant's Motion for Default Judgment

The day after Robert Barrett died, Mike Fowler began a two-day inspection of Barrett's rebreather that involved some disassembly.  Defendant contends that Fowler inspected Barrett's rebreather at the request of the Susquehanna Regional Police Department ("SRPD").  Plaintiff counters – unpersuasively – that Fowler undertook his inspection as Ambient's agent.  Among the items Fowler inspected were two VR3 dive computers ("VR3s" or "dive computers") and a cannister containing scrubber material

intended to absorb carbon dioxide ("$CO_2$") from exhaled air prior to recirculation. VR3s record several pieces of data, at ten-second intervals, and store that information for one year. Within that year, information that has been stored in a VR3 can be downloaded and used to prepare profiles of individual dives. After his inspection, Fowler prepared a three-page report.

Neither the police nor Fowler downloaded data from Barrett's dive computers.[1] However, Fowler's report suggested doing so, to recover a dive profile that could be examined "to pinpoint exactly the time [Barrett] stopped moving." (Def.'s Mot. for Sanctions (document no. 103), Ex. B, at 3.) During his examination of the rebreather, Fowler drained water from the unit's $CO_2$ scrubber cannister, noted that it had been packed with a $CO_2$ absorbent called "Drager Dive Sorb,"[2] and further noted that the absorbent was saturated. In a draft of his report, but seemingly not the final version, Fowler suggested further testing of the $CO_2$ absorbent for calcium carbonate, as a way of determining whether the absorbent had been exhausted.

---

[1] Without downloading data from Barrett's VR3s, Fowler was able to recover a small bit of information from them on each of Barrett's last eight dives: the start time, the maximum depth, and the total duration.

[2] The instruction manual for Barrett's rebreather refers to a different scrubber material, 1.0 – 2.5 mm diving grade Sofnolime, and warns that the Sofnolime use-life data it provides does not apply to other scrubber materials.

4

The SRPD held Barrett's diving equipment until it was transported (in mid March, at plaintiff's expense) to the Navy Experimental Dive Unit ("NEDU") for further testing.[3] David Cowgill of NEDU reported that he "interrogated" the VR3 dive computers for "stored dive data." That interrogation produced the same information that Fowler recovered from the VR3s – start times, maximum depths, and durations – and the NEDU report does not include dive profiles. Cowgill also reported that while NEDU received "a bag of used carbon dioxide absorbent . . . [n]o tests were performed on the absorbent material due to degradation that occurs after flooding." (Id., Ex. D, at 18.) NEDU's final report is dated June 9, 2003, and it was addressed to Lt. Englert of the SRPD.

At some point in July, Barrett's diving equipment was turned over to Attorney Heyman (id., Ex. E, at 16; Def.'s Mot. for

---

[3] While it is not clear, it appears that the SRPD retained custody of all of Barrett's equipment from the day of the accident until the equipment was transported to NEDU. A January 9, 2003, letter from Attorney Frederic Heyman to Lieutenant Steven Englert of the SRPD suggests that Attorney Heyman intended to take custody of the VR3 units after a meeting scheduled for January 15. (Def.'s Mot. for Default Judgment (document no. 197), Ex. G.) But in a follow-up letter dated January 17, Attorney Heyman indicated that the VR3 units were to be sent to NEDU along with the rest of Barrett's equipment (id., Ex. H), which suggests that he may not have taken them with him after the January 15 meeting. In any event, Attorney Heyman never downloaded any data from those units. (Pl.'s Opp. to Def.'s Mot. to Compel (document no. 231), Ex. A (Heyman Aff.).)

Default Judgment, Ex. F (Englert Dep.), at 126), but the record does not appear to indicate whether NEDU ever returned the bag of scrubber material.  On September 8, 2003, just over a month after it became impossible to download data from Barrett's VR3 units, Attorney Heyman sent a number of items to Jeffrey Bozanic for examination, including Barrett's VR3 units and a VR3 download kit. (Def.'s Mot. for Sanctions (document no. 103), Ex. E, at 39-40.)

Ambient's attempt to download data from the VR3 units in November 2007 was unsuccessful.

Defendant contends that it is entitled to default judgment, or some lesser sanction such as exclusion of evidence or a jury instruction on spoliation, because plaintiff failed to preserve the data recorded on Robert Barrett's VR3 dive computers and the absorbent material recovered from the $CO_2$ scrubber cannister on Barrett's rebreather.  Plaintiff counters that Fowler was Ambient's agent and could have downloaded the VR3 data the day after the accident if he had wanted to, and that she did not have the ability to download VR3 data until after it became unavailable due to the passage of time.  Regarding the $CO_2$ absorbent, plaintiff argues that she could not be liable for spoliation because there is no evidence that she ever had the

6

absorbent in her possession.  Finally, plaintiff contends that if anyone is liable for spoliation, it is Ambient, as a result of Fowler's tear-down of the rebreather during the course of his inspection.

"Sanctions for spoliation range from dismissal of the action, exclusion of evidence or testimony or instructing the jury on a negative inference to spoliation whereby [the] jury may infer that party that destroyed evidence did so out of realization that it was unfavorable."  Jimenez-Sanchez v. Caribbean Rests., LLC, 483 F. Supp. 2d 140, 143 (D.P.R. 2007) (quoting Perez v. Hyundai Motor Co., 440 F. Supp. 2d 57, 62 (D.P.R. 2006)).

> The intended goals behind excluding evidence, or at the extreme, dismissing a complaint, are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence.  See Sacramona [v. Bridgestone/Firestone, Inc.], 106 F.3d [444,] 446 [(1st Cir. 1997)].  Therefore, of particular importance when considering the appropriateness of sanctions is the prejudice to the non-offending party and the degree of fault of the offending party.  See id. at 447.

Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir. 1998) (emphasis added).  In light of those goals, the court of appeals for this circuit "views dismissal with prejudice as a harsh sanction which runs counter to [its] strong policy favoring

the disposition of cases on the merits." Id. at 28 (quoting Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir. 1995)) (brackets and internal quotation marks omitted).

Assuming plaintiff actually committed spoliation – which is far from clear – dismissal of her case would be too harsh a sanction. In some cases, a spoliator may reasonably be charged with knowledge of the potential evidentiary value of the material he or she is alleged to have destroyed. See, e.g., Blinzler v. Marriot Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996) (defendant destroyed telephone logs while on notice that they were relevant to likely litigation, in which timing of phone call recorded in those logs was at issue). But here, plaintiff can hardly be said to have known that VR3 downloads would hurt her case. It is all but undisputed that the VR3 dive computers were never downloaded,[4] so plaintiff did not know what evidence they contained or whether that evidence was favorable or unfavorable to her case. Thus, she stands in a different position than the defendant in Blinzler, which could reasonably be charged with

---

[4] Plaintiff has testified, by affidavit, that she never downloaded Barrett's VR3s. Defendant's only evidence to the contrary is exceptionally weak, consisting of David Bouder's deposition testimony that a telephone conversation with plaintiff indicated to him that she "was familiar with the dive profiles." (Def.'s Mot. for Default Judgment, Ex. I, at 10.) However, that statement came after Bouder had testified that he didn't "know whether Stephanie [the plaintiff] had [VR3 downloads] or not." (Id. at 9.)

8

knowing what time plaintiff called the hotel front desk asking for medical assistance and what time front desk personnel called for an ambulance.  Similarly, the $CO_2$ absorbent was never analyzed, so plaintiff had no idea whether calcium carbonate testing would have helped her case or hurt it.

Regarding plaintiff's degree of fault, even if the VR3 data became inaccessible while Attorney Heyman had custody of the VR3s, it seems apparent that neither Attorney Heyman nor the plaintiff herself knew that data from the VR3 would become unavailable one year after the accident.  Plaintiff purchased a download kit more than one year after the accident, and Attorney Heyman sent a download kit to Jeffrey Bozanic in September of 2003.  Thus, the record suggests that both plaintiff and Attorney Heyman believed – erroneously, it turns out – that the VR3 data were still accessible more than a year after the accident, which diminishes their degree of fault for letting the one-year period pass without downloading the VR3s.  As for the scrubber material, it seems to have been lost before plaintiff, through her attorney, ever took custody of Barrett's diving equipment, which makes it difficult to fault her for its loss.

Because plaintiff is not alleged to have engaged in any deliberate conduct that resulted in the destruction or loss of

either VR3 data or scrubber material, and because she appears never to have had control over the scrubber material, this is not a typical spoliation case.  See, e.g., Trull v. Volkswagen of Am., 197 F.3d 88 (1st Cir. 1999) (in products liability action, plaintiffs' insurance company disposed of the car in which plaintiffs were injured); Collazo-Santiago, 149 F.3d 23 (same); Blinzler, 81 F.3d 1148 (defendant destroyed telephone records); Jimenez-Sanchez, 483 F. Supp. 2d 140 (defendant in products liability action refused to turn over bottle of allegedly tainted water to person injured after drinking it, and subsequently lost it).  If there was any spoliation at all, plaintiff was at worst negligent, making her degree of fault relatively minor.  Accordingly, defendant is not entitled to dismissal of plaintiff's claims.  Whether defendant may be entitled to other relief for spoliation will be decided during the course of trial.

### Plaintiff's Motion for Summary Judgment

Defendant initially asserted three counterclaims, but has voluntarily withdrawn Count Two, leaving claims for fraud on the court (Count One) and spoliation of evidence (Count Three).  Plaintiff moves for summary judgment on both counts.

Notwithstanding defendant's assertion to the contrary, the First Circuit has not "recognized that a defendant may maintain

an independent cause of action against a plaintiff for 'fraud on the court.'"  Rather, in Hull v. Municipality of San Juan, 356 F.3d 98 (1st Cir. 2004), the case on which defendant relies for the cause of action described in Count One of its counterclaim, the court of appeals affirmed the district court's decision to dismiss a personal injury lawsuit based its "finding of fraud in the conduct of the litigation" id. at 99.  In other words, the court recognized fraud on the court as a basis for dismissing a plaintiff's claims, but not as a theory of recovery.  Fraud on the court is not an independent cause of action.  Plaintiff's motion for summary judgment is granted as to Count One of defendant's counterclaim.

Regarding Count Three, defendant's claim for plaintiff's alleged spoliation of evidence, the existence of such a cause of action is an unsettled question of New Hampshire law.  See Rodriguez v. Webb, 141 N.H. 177, 179 (1996) ("we need not decide whether New Hampshire recognizes an independent cause of action based on intentional spoliation of evidence").  In the absence of a recognized cause of action under New Hampshire law, and given the availability of other appropriate relief, as discussed above, plaintiff is entitled to summary judgment on Count Three of defendant's counterclaim.

## Conclusion

For the reasons given, defendant's motion to apply English Law (document no. 187) and its motion for default judgment (document no. 197) are both denied, and plaintiff's motion for summary judgment on defendant's counterclaims (document no. 200) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 16, 2008

cc: Dona Fenney, Esq.
    John P. Fagan, Esq.
    Richard W. Evans, Esq.
    Mary A. Dempsey, Esq.
    Walter P. DeForest
    David G. Concannon
    Thomas M. Brown, Esq.
    Courtney Q. Brooks, Esq.
    David J. Berardinelli, Esq.
    Nannina L. Angioni, Esq.