UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephanie B. Barrett,
individually; and as
Administratrix of the Estate
of Robert C. Barrett, deceased;
and as natural mother of
Madison Hope Barrett, a minor,
    Plaintiff

                                               Civil No. 06-cv-240-SM

    v.                                     Opinion No. 2008 DNH 199

Ambient Pressure Diving, Ltd.,
    Defendant

**O R D E R**

Defendant has filed a supplemental motion for application of English law.  Defendant concedes that English law and New Hampshire law are substantially similar with regard to the liability aspects of plaintiff's various causes of action, and agrees to the application of New Hampshire law to all liability questions.[1]  But, based on differences between the damages available under the two legal schemes, defendant asks the court to: "(1) bar the request for hedonic damages on any of the Plaintiff's claims; and (2) bar the request for multiplied damages on the Plaintiff's Unfair Trade Practices claim, as no such multiplication of damages is permitted under English

---

[1] Defendant's proposed jury instructions on strict liability, negligent design, and unfair and deceptive trade practices all describe New Hampshire law.

Consumer Protection statutes."[2]  Defendant has subsequently identified two additional aspects of English law from which it seeks to benefit — the unavailability of damages for loss of consortium, see Massaquoi v. Virgin Atl. Airways, 945 F. Supp. 58, 61 (S.D.N.Y. 1996), and the English cost-shifting rule under which "the prevailing party can generally recover its attorneys' fees from the losing party," RLS Assocs., LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206, 210 (S.D.N.Y. 2006).

Plaintiff objects, and asks the court to apply New Hampshire law, which: (1) permits the recovery of hedonic damages in wrongful death cases, see Marcotte v. Timberlane/Hampstead Sch. Dist., 143 N.H. 331, 336-345 (1999); (2) allows for an award of double or treble damages in private actions brought under the Consumer Protection Act, see N.H. Rev. Stat. Ann. ("RSA") § 358-A:10, I; (3) permits spouses and minor children to recover in wrongful-death cases, see RSA 556:12, II & III; and (4) follows the American rule, under which "each party is responsible for paying his or her own counsel fees" unless there is "statutory authorization [to the contrary], a court rule, an agreement

---

[2] English law does, indeed, bar the recovery of hedonic damages in wrongful death cases, see Administration of Justice Act, 1982, c. 53, § 1(1)(a), and would appear to bar the recovery of punitive or exemplary damages in product liability cases, see Broom v. Cassell & Co., (1972) App. Cas. 1027 (citing Rookes v. Barnard, (1964) App. Cas. 1129)).

between the parties, or an established exception [to the general rule]." In re Martel, 157 N.H. 53, 63 (2008) (citing In re Hampers, 154 N.H. 275, 289 (2006)).

The choice-of-law question presented here is somewhat complicated. The plaintiff's decedent, a Maryland resident, died while diving in Pennsylvania, using a rebreather manufactured in England, imported to North America through Canada, and purchased by the decedent through a New Hampshire dive shop. Plaintiff initially brought this suit in the District of Pennsylvania. Venue was subsequently transferred to this court, given the lack of personal jurisdiction over Ambient in Pennsylvania.

There are substantive differences between English damages law and New Hampshire law. Accordingly, a choice-of-law analysis is necessary. See Royal Bus. Group, Inc. v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991). New Hampshire's choice-of-law rules apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). (While there is some authority for the proposition that a court adjudicating a case that has been transferred to it should apply the choice-of-law rules of the jurisdiction from which the case was transferred, see CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211, 1213 (1st Cir. 1995), that proposition would seem inapplicable where,

as here, the transferring court lacked personal jurisdiction over the defendant.)

The choice-of-law analysis is not, of course, limited to consideration to the two options suggested by the parties.  <u>See</u> <u>LaBounty v. Am. Ins. Co.</u>, 122 N.H. 738, 741 (1982) ("While Thompson urges that New Hampshire law should be applied and LaBounty contends that Massachusetts law should control, we will not be restricted to the choice of the parties where it is clear that the interests of another State – Maine – are also involved.").[3]  Because Robert Barrett was a resident of Maryland at the time of his death, and the plaintiff is currently a resident of that state, due consideration must be given to the application of Maryland law, notwithstanding the fact that neither party seeks its application.  <u>See</u> <u>id.</u>  That Robert Barrett died in Pennsylvania gives rise to that state's interest in the liability aspect of the case, but it is difficult to see what compelling interest Pennsylvania might have with respect to

---

[3] Pennsylvania appears to follow a similar rule.  <u>See</u> <u>Commonwealth v. Eichinger</u>, 915 A.2d 1122, 1133 (Pa. 2007) (citing <u>Commonwealth v. Ohle</u>, 470 A.2d 61, 68 (Pa. 1983)) ("where more than one state has a substantial connection with the activity in question, the forum state may analyze the interests of <u>all states involved</u> and choose which state's law to apply") (emphasis added).

the damages a Maryland citizen might recover from an English
defendant.

The New Hampshire Supreme Court "has rejected the
traditional lex loci delicto rule that the law of the forum where
the injury occurs is paramount."   LaBounty, 122 N.H. at 741.
Rather, conflict-of-law questions are resolved by weighing five
choice-influencing considerations:

> (1) predictability of results; (2) maintenance of
> reasonable orderliness and good relationship among the
> States in our federal system; (3) simplification of the
> judicial task; (4) advancement by the court of its own
> State's governmental interests rather than those of
> other States; and (5) the court's preference for what
> it regards as the sounder rule of law.

Lessard v. Clarke, 143 N.H. 555, 556 (1999) (quoting Ferren v.
Gen. Motors Corp., 137 N.H. 423, 425 (1993)).[4]

---

[4] For its part, Pennsylvania employs a "flexible choice of
law rule which weighs the interests [all] states [involved] may
have in the transaction."   Eichinger, 915 A.2d at 1133 (citing
Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa.
1964)).  As the Pennsylvania Supreme Court explained in Griffith:

> [A]fter careful review and consideration of the leading
> authorities and cases, we are of the opinion that the
> strict lex loci delicti rule should be abandoned in
> Pennsylvania in favor of a more flexible rule which
> permits analysis of the policies and interests
> underlying the particular issue before the court.  As
> said in Babcock v. Jackson, "The merit of such a rule
> is that it gives to the place having the most interest
> in the problem paramount control over the legal issues
> arising out of a particular factual context and thereby
> allows the forum to apply the policy of the

Both parties agree that the liability aspect of each of plaintiff's claims should be governed by New Hampshire law. While the court might, independently, come to a different conclusion, the parties' agreement will be honored, as it simplifies the judicial task.

The parties' choice-of-law disagreement is about damages. While it might seem strange to apply the law of one jurisdiction to resolve liability issues, and the law of another to resolve damages claims (called "depecage" see Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 & n.4 (2d Cir. 2008)), the application of different states' laws to different issues is not uncommon.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. d ("courts have long recognized that they are not bound to decide all issues under the local law of a single state").  Application of New Hampshire's law to the liability issues does not necessarily foreclose application of the law of a different jurisdiction to plaintiff's claims for damages.  See Lessard, 143 N.H. at 558 (determining, without reference to the applicable liability law, that Ontario law of damages applied in negligence

---

> jurisdiction most intimately concerned with the outcome
> of the particular litigation."

203 A.2d at 805-06 (footnote, citations, and internal quotation marks omitted).  Thus, it seems relatively certain that if the court were to undertake its analysis under Pennsylvania's choice-of-law rule, the result would be identical.

6

action arising out of motor vehicle accident in New Hampshire).
So, the choice-of-law analysis described in <u>Lessard</u> determines
whether the damages law of England, New Hampshire, or Maryland
should apply in this case.

The first element of the choice-of-law analysis,
"[p]redictability of results[,] relates primarily to consensual
transactions, in which it is important that parties be able to
know in advance what law will govern a transaction so that they
can plan it accordingly." <u>Lessard</u>, 143 N.H. at 556-57 (quoting
<u>LaBounty</u>, 122 N.H. at 742). "This factor 'emphasizes the
importance of applying to the parties' bargain or other dealings
the law on which they agreed to rely at the outset.'" <u>Ferren</u>,
137 N.H. at 426 (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 131
N.H. 6, 17 (1988)).

Here, there is evidence that Robert Barrett's rebreather
owner's manual included a reference to choice of law that
provided: "All products are sold only on the understanding that
only English law applies in cases of warranty claims and product
liability, regardless of where the equipment is purchased or
where used." Evidence in the record also establishes that
Barrett read the owner's manual. While Barrett's awareness of
the choice-of-law provision in his owner's manual does not

establish that he explicitly agreed to be bound by English law,
it does demonstrate Ambient's expectation that English law would
apply to at least some of the claims a purchaser might bring
against it.  Barrett's acknowledgment that he read his owner's
manual also demonstrates at least his knowledge of Ambient's
expectation in that regard.

    Plaintiff's argument in support of applying New Hampshire
law is based on multiple contacts between Robert Barrett and
Cliff Simoneau, a New Hampshire resident who sold the rebreather,
as well as contacts between Simoneau and Ambient.[5]  In
plaintiff's view, those contacts show that the goal of
predictability of results would be enhanced by applying New
Hampshire law.  Plaintiff's point might be well taken if this
were a suit against Cliff Simoneau, or a dispute between Simoneau
and Ambient.  But the issue is what damages are available to a
Maryland plaintiff for the death of a Maryland resident using a
device that was allegedly defectively designed in England.  None
of plaintiff's asserted causes of action arise out of conduct she

---

    [5] Plaintiff also notes that in years following this
accident, in 2005 and 2007, Silent Diving Systems, Ambient's
North American distributor, used a liability release requiring
that any suit against itself or Ambient be brought under the laws
of the State of New Hampshire.  Plaintiff argues, unpersuasively,
that since all future actions against Ambient must be brought
under New Hampshire law, it would create confusion to apply the
law of another jurisdiction in this suit.

identifies as having taken place in New Hampshire (e.g.,
Simoneau's collecting checks from Robert Barrett or running his
credit card number).  With respect to plaintiff's product
liability claim, the first Lessard factor favors application of
English law.

The choice-of-law provision in Barrett's owner's manual says
nothing about consumer protection claims, which could support a
conclusion that even Ambient did not expect consumer protection
claims to be resolved under English law.  The owner's manual
provision is the only relevant discussion of choice-of-law that
has been brought to the court's attention.  With respect to
plaintiff's consumer protection claim, the first factor points
toward none of the three jurisdictions.

The "second consideration [in the choice-of-law analysis],
the maintenance of reasonable orderliness and good relationship
among the States in our federal system, requires no more 'than
that a court apply the law of no state which does not have
substantial connection with the total facts and with the
particular issue being litigated.'"  Lessard, 143 N.H. at 557
(citation omitted).  Here, as in Lessard, the court assumes,
without deciding, that this factor applies to nation states as
well.  See id.

The operative concern is comity.  Plainly, principles of comity would not be offended by applying either the law of Maryland or the law of England.  Robert Barrett was a citizen of Maryland at the time of his death, and plaintiff is a citizen of Maryland.  Ambient designed and manufactured Robert Barrett's rebreather in England.  It seems apparent that New Hampshire is the forum with the weakest connection to the facts of this case.  The rebreather was not designed, manufactured, or used in New Hampshire, and may have never been in the state at all.  Cliff Simoneau performed administrative tasks incident to the sale of the rebreather, but none of Simoneau's activities are at issue in any of plaintiff's asserted causes of action.  Finally, if plaintiff prevails, no damages will be paid by or recovered by a citizen of New Hampshire.  In sum, the second factor disfavors the application of New Hampshire law and points, about equally, toward both Maryland law and English law.

The "third consideration is the simplification of the judicial task."  Lessard, 143 N.H. at 557.  Because the only contested issue is the availability of various types of damages, and because the relevant law is readily available, this factor adds little weight in favor of either forum.  Cf. Benoit v. Test Sys., Inc., 142 N.H. 47, 53 (1997) (citing LaBounty, 122 N.H. at 743).

The "fourth consideration is the advancement by the court of its own State's governmental interest." Lessard, 143 N.H. at 558.  Again, it is important to be clear that in this case, the inquiry should focus on the relative interests of Maryland, England, and New Hampshire in the nature and scope of the damages plaintiff could recover if she prevails.

It is difficult to see any governmental interest that would tip this factor in favor of applying New Hampshire law.  Where no New Hampshire conduct is advanced as a basis for recovery, and where any recovery will be paid by an English defendant to a Maryland plaintiff, New Hampshire does not have an overriding interest in the application of its law in determining damages. Plaintiff's argument to the contrary, based on New Hampshire's interest in "protect[ing] its citizens from dangerous and potentially fatal devices" and its putative "corollary responsibility to halt the exportation of such devices to its sister states" and "duty, right and obligation to its sister states," is simply not persuasive; the interest plaintiff ascribes to New Hampshire is no greater than the interest any other state might have in the outcome of this case.  Because the governmental interest factor substantially weighs against application of New Hampshire law, as opposed to either English law or Maryland law, it is unnecessary to consider the final

11

factor before determining that New Hampshire law should not be applied.

As between Maryland and England, with regard to the question of damages, Maryland decidedly has the stronger interest. Stephanie Barrett lost her husband, and her daughter lost a father.  Both are citizens of Maryland.  Maryland's interest in effecting its policy judgment regarding just compensation for injuries suffered by its citizens due to tortious conduct substantially outweighs England's interest in regulating damages payable by its citizens whose conduct results in injuries sustained by foreign citizens in foreign jurisdictions.

Ambient argues that English law ought to be applied because, absent an enforceable choice-of-law provision, Ambient "would have little control over which country or principality's laws might apply to any claim made against it [and] would, in effect, need to ensure its compliance with the laws of every country in the world containing a water body accessible by scuba equipment." The foregoing concern might militate against the application of non-English law to the question of liability, where complying with the requirements of numerous product liability and consumer protection schemes could be costly and difficult.  But here, Ambient has agreed to the application of New Hampshire law to the

issue of liability.  The only English law it seeks to have
applied is law that would, comparatively, limit plaintiff's
recovery.  But it is difficult to see how applying English law
rather than Maryland law on the question of damages would
materially advance Ambient's interest in simplifying its
compliance responsibilities.

     In sum, the fourth factor eliminates New Hampshire law from
consideration, and points strongly in the direction of Maryland
law.

     The "final consideration is the court's preference for what
it regards as the sounder rule of law."  Lessard, 143 N.H. at
558.  (citation omitted).  In doing so, the court must compare
English and Maryland law.  But, there is a twist.  The law in
Maryland is that "where the events giving rise to a tort action
occur in more than one State, [Maryland courts] apply the law of
the State where the injury – the last event required to
constitute the tort occurred."  Erie Ins. Exch. v. Heffernan, 925
A.2d 636, 648–49 (Md. 2007) (quoting Lab. Corp. of Am. v. Hood,
911 A.2d 841, 845 (Md. 2006)).  In Erie, Maryland's highest court
held that "because the automobile collision [at issue] occurred
in Delaware, under Maryland law, a Maryland Court would apply the
substantive tort law of Delaware to determine what the claimants

are 'entitled to recover' in an action for uninsured motorist benefits." 925 A.2d at 649; see also Naughton v. Bankier, 691 A.2d 712 (Md. Ct. Spec. App. 1997) (holding that in action brought in Maryland, against Maryland defendant, plaintiff's entitlement to an instruction on punitive damages was governed by law of Delaware, where plaintiff was injured). Thus, in analyzing the fifth factor, English law should be compared to Pennsylvania law because, under Maryland law, the plaintiff in this case would be entitled to recover those damages available under the law of Pennsylvania, the state in which Robert Barrett died.[6]

Because both England and Pennsylvania bar the recovery of hedonic damages in wrongful death cases, see Administration of Justice Act, 1982, c. 53, § 1(1)(a); Willinger v. Mercy Catholic Med. Ctr. of Se. Pa., 393 A.2d 1188, 1190-91 (Pa. 1978), analysis of the final factor reduces to the three identified areas of difference between English and Pennsylvania law: (1) punitive or exemplary damages in product-liability actions (available under Pennsylvania law but not under English law); (2) damages for loss

---

[6] Applying New Hampshire law to liability and the law of another jurisdiction to damages would be unlikely to trouble a court in Maryland, as Maryland has also embraced the concept of depecage. See Erie, 925 A.2d at 649-50 (citing Bishop v. Twiford, 562 A.2d 1238, 1241 (Md. 1989); Hauch v. Connor, 453 A.2d 1207 (Md. 1983)).

of consortium (available under Pennsylvania law but not under English law); and (3) shifting attorneys' fees to the losing party (available under English law but not generally available under Pennsylvania law).  In each area, the court determines that the law of Pennsylvania provides the sounder rule.

**Punitive or exemplary damages**.  In Pennsylvania, punitive damages appear to be available in product liability cases.  <u>See</u> <u>Hutchinson v. Penske Truck Leasing Co.</u>, 876 A.2d 978, 983 (Pa. Super Ct. 2005) ("In product liability cases grounded in a theory of strict liability, it appears that a plaintiff may seek punitive as well as compensatory damages, although our Supreme Court has not definitively so held.").  Such damages, however, "are awarded only in rare instances, to punish and deter outrageous, extreme, egregious behavior." <u>Id.</u> (citing <u>Martin v.</u> <u>Johns-Manville Corp.</u>, 494 A.2d 1088, 1096-97 (Pa. 1985), <u>abrogated on other grounds</u>, <u>Kirkbride v. Lisbon Contractors,</u> <u>Inc.</u>, 555 A.2d 800 (Pa. 1989)).  By making punitive damages available in product liability actions, Pennsylvania law discourages the sale of products known to be defective when the seller is willing to accept the payment of ordinary compensatory damages for product liability as a reasonable cost of doing business.  Pennsylvania law provides a greater disincentive for

15

manufacturers and sellers to distribute defective and unreasonably dangerous products.

According to the Pennsylvania Suggested Standard Civil Jury Instructions, punitive damages are also available to an estate that prevails in a survival action (but not to survivors who prevail in a wrongful death action).  Pennsylvania's remedial rule aimed at outrageous conduct is generally preferable to a system of compensation without such disincentives.

**Loss of consortium.**  The death of a loved one represents both an economic and a non-economic loss to the immediate family of the deceased.  Pennsylvania law provides compensation for those non-economic losses; English law does not.  The sounder rule (and the rule more consistent with social and policy expectations of the jurisdictions in which the injury has had an affect) is that which both recognizes and compensates a significant injury.  Pennsylvania's is the sounder rule.

**Attorneys' fees.**  "[Pennsylvania] has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception."  De Lage Landen Fin. Servs., Inc.

16

v. Rozentsvit, 939 A.2d 915, 923 (Pa. Super. Ct. 2007) (quoting

Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999)).  The

English cost-shifting rule is generally thought to quite

effectively discourage frivolous litigation, but it also

effectively reduces access to the courts by those with non-

frivolous claims but no means to pay opponents' legal fees in the

event of an adverse resolution.  As the New Hampshire Supreme

Court has explained:

> Underlying the rule that the prevailing litigant
> is ordinarily not entitled to collect his counsel fees
> from the loser is the principle that no person should
> be penalized for merely defending or prosecuting a
> lawsuit.  An additional important consideration is that
> the threat of having to pay an opponent's costs might
> unjustly deter those of limited resources from
> prosecuting or defending suits.

Harkeem v. Adams, 117 N.H. 687, 690 (1977) (citing Tau Chapter,

Alpha Xi Delta Frat. v. Durham, 112 N.H. 233, 237 (1972);

Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714,

718 (1967)).  Moreover, while the American rule generally

requires a defendant to bear the cost of successfully defending

against claims that are ultimately determined to lack merit,

"under Pennsylvania law, a litigant is entitled to attorneys fees

if he [or she] can establish that an action was brought

arbitrarily, vexatiously, or in bad faith."  P. Liedtka Trucking,

Inc. v. James H. Hartman & Son, Inc., 537 F. Supp. 381, 382 (E.D.

Pa. 1982) (citing 42 PA. CONS. STAT. ANN. § 2503(9) (West 1981)).

Because the American rule, as practiced in Pennsylvania, does not "unjustly deter those of limited resources from prosecuting or defending suits," Harkeem, 117 N.H. at 690, while also providing protection from bearing the cost of vexatious litigation, see Liedtka Trucking, 537 F. Supp. at 382, Pennsylvania's version of the American rule presents a sounder option.

In each of the three areas where English law differs from Pennsylvania law, Pennsylvania provides the sounder rule.  Thus, as with the governmental-interest factor, the final factor also favors the application of Maryland law, which, in turn, provides that plaintiff would be entitled to recover those damages that are available in Pennsylvania.

New Hampshire's interest in applying its law to the determination of damages in this case is insubstantial compared to that of Maryland and England.  As between Maryland and England, predictability of results (factor one) favors England slightly; comity (factor two) and simplification of the judicial task (factor three) favor neither jurisdiction; governmental interest (factor four) favors Maryland law; and preference for the sounder rule of law (factor five) favors the Pennsylvania law that Maryland courts would apply to determine the damages available in this case.  Accordingly, defendant's supplemental

18

motion for application of English law (document no. 274) is denied.  The damages available to plaintiff, in the event she prevails, will be those a Maryland court would award, which are those available under Pennsylvania law.


**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

November 17, 2008

cc:  Nannina L. Angioni, Esq.
     David J. Berardinelli, Esq.
     Courtney Q. Brooks, Esq.
     Thomas M. Brown, Esq.
     David G. Concannon, Esq.
     Walter P. DeForest, Esq.
     Mary A. Dempsey, Esq.
     Richard W. Evans, Esq.
     John P. Fagan, Esq.
     Dona Fenney, Esq.
     Jamie N. Hage, Esq.
     Samuel Hankin, Esq.
     Pamela J. Khoury, Esq.
     Mark L. Mallory, Esq.
     W. John McNally, III, Esq.
     Robert H. Miller, Esq.
     John T. O'Connell, Esq.